LILLIAN NELSON, Respondent, v. KANSAS CITY, Appellant.

**Kansas City Court of Appeals, May 19, 1913.**

1. **NEGLIGENCE: Personal Injuries: Ministerial Duty: Sidewalks: Catch Basins.** The plaintiff sued to recover for personal injuries sustained, while crossing a public street. The plaintiff and her husband were walking westward on the north side of Fourteenth St. about ten o'clock in the evening and when they came to Locust street the plaintiff stepped from the curb into a depression in front of a catch basin, fell to the pavement, and was injured. *Held*, that since the depression was put in an unusual and more dangerous place in the sidewalk, an apparent and actual departure from the general plan, and where pedestrians had no reason to anticipate it would be, the jury were entitled to indulge in the inference, that such construction was a negligent breach of a ministerial duty the city owed to the plaintiff.

2. ———: ———: ———: **Improvement: Public Streets.** In the improvement of public streets, a city acts in two capacities, governmental and ministerial, and cannot be punished in damages for acts performed in its legislative capacity; but may be held for injurious results of acts relating to the improvement and maintenance of public streets which are of a ministerial character.

Appeal from Jackson Circuit Court.—*Hon. Walter A. Powell*, Judge.

AFFIRMED.

*A. F. Evans, J. W. Garner,* and *Hunt C. Moore* for appellant.

The court erred in refusing to give the peremptory instruction asked by defendant Kansas City at the close of plaintiff's case and again at the close of the entire case. Hays v. Columbia, 141 S. W. 3; Gallagher v. Tipton, 133 Mo. App. 557; Ely v. St. Louis, 181 Mo. 729; Shippey v. Au Sable, 32 N. W. 741; Urquhart v. Ogdensburg, 91 N. Y. 67; Conlon v. St. Paul, 72 N. W. 1073; Young v. Railroad, 93 Mo. App. 267.

*Kimbrell & White* for respondent.

(1) The defendant city, having undertaken the work of constructing the catch basin, was liable for negligence in said construction to anyone injured as a result of said negligence. Anyone can see at a glance that this sixteen-inch depression, right in the line of travel, was dangerous to persons passing along there, especially if the street be ill lighted, and we submit the defendant city was negligent in placing it as it is for the mere sake of saving the trouble of cutting through some tree roots or removing the tree. Plaintiff insists that it was more important to save travelers from harm than to save the little extra trouble that would have placed this basin out of the line of travel. Ely v. St. Louis, 181 Mo. 730; Gallagher v. Tipton, 133 Mo. App. 557. (2) On the question of negligent construction and improper and insufficient lighting, this case, under all the evidence, was one for the decision of a jury. Gallagher v. Tipton, 152 Mo. App. 412. (3) Even if the defendant city could have been excused, on account of the location of the tree in placing this sixteen-inch step-off right in the "line of march," the tree having long since disappeared, the dangerous condition at this corner should have been corrected. Roth v. St. Joseph, 164 Mo. App. 26.

JOHNSON, J.—Plaintiff sued to recover damages for personal injuries sustained by falling on one of the public streets of Kansas City. The injury occurred December 3, 1910, at ten o'clock p. m. at the intersection of Fourteenth and Locust streets. The petition alleges that defendant "carelessly and negligently permitted a depression and excavation to be and remain in said public streets, at a point on said streets near the northeast corner of the intersection of the streets aforesaid and in the line of travel of per-

sons going along the sidewalk on the north side of Fourteenth street and crossing directly across to the northwest corner of the intersection of said streets, and that defendant on the date last above mentioned, and for a long time prior thereto, permitted the street at said intersection to be and remain dark and improperly lighted, and that on account of the things hereinbefore stated, the said streets at said intersecting point was in a condition dangerous and unsafe to travelers along and upon said street; that said unsafe and dangerous condition of the streets, as hereinbefore set forth, was well known to defendant, or defendant, by the exercise of reasonable care might have known thereof a sufficient length of time before the injury to plaintiff as herein above set forth, to have repaired said street and thus avoided the injury to plaintiff.''

The answer is a general denial and a plea of contributory negligence. Plaintiff recovered judgment in the circuit court for $750, and defendant appealed.

The place of the injury is in a thickly settled part of the city. Both Locust and Fourteenth streets were paved with asphalt and had granitoid sidewalks. Plaintiff and her husband were traveling westward along the sidewalk on the north side of Fourteenth street. They walked abreast and she was on the north side. At the crossing of Locust street she stepped from the curb to the asphalt pavement into a depression in front of a catch basin and fell to the pavement receiving the injuries for which she claims damages. She was on the crossing, in the line of the sidewalk and, of course, in the usual path of pedestrian travel on that side of Fourteenth street. There was an old medium-sized tree at the corner and in the sidewalk space. Three feet north of the tree was the south end of the cover of the catch basin. The opening of the basin faced west and was in the curb line. The depth of the opening from the surface of the sidewalk was

sixteen inches and there was a sloping depression in the pavement towards the opening, the beginning of the slope at its south end being about midway between the basin cover and the tree. From that point to the tree the elevation of the curb and sidewalk above the pavement at the crossing was five or six inches. The night was clear and there were street lights near that intersection, but the evidence of plaintiff describes the lights as being very dim and the place so dark that she did not observe the catch basin nor the depression in front of it. She stepped down a distance of fourteen or fifteen inches into the concavity when she was expecting to take a step of five or six inches to a level surface. She was not familiar with that corner and did not know the catch basin was there. Uncontradicted evidence shows that the catch basin was of the type and dimensions in general use over the city and that the depression in front of the opening was of the usual construction and depth. But the evidence of plaintiff tends to show that this particular basin was put in an unusual place; that generally they were placed at sidewalk corners, or on the other side of the cross sidewalk line, while in this instance, the basin not only was inside the sidewalk space but was in the middle of the pathway pedestrians traveling on the north side of Fourteenth street were invited, and might be expected, to follow:

One of defendant's witnesses, the chief draftsman in the office of the city engineer, testified on cross-examination:

"Q. Who determines whether or not these basins shall be placed in the line of travel along the walk or shall be placed at the corner or out of reach of the line of travel—who determines that? A. The engineer.

"Q. That isn't done by ordinance of the city? A. No, sir, it locates it at the corner and is optional.

170 Mo. App.—35

Nelson v. Kansas City.

"Q. Then the engineer uses his judgment? A. Yes, sir.

"Q. Are they placed in the line of travel in the sidewalk as it here appears in other places in the city? A. Why, sometimes.

"Q. For what reason? A. Well, maybe for the same reason that was placed there.

"Q. What reason do you give for placing that there? A. At the time that basin was built there was a big tree just north of the present location of the basin.

"Q. And it was to keep from cutting underneath that tree or removing the tree that this was placed in the line of travel? A. That's my opinion of it.

"Q. There was no reason present here, from your examination, why that couldn't have been placed at this corner by the removal of the tree? A. Yes, sir, it couldn't have been placed at this corner by the removal of the tree? A. Yes, sir, it couldn't have been placed at that corner.

"Q. Why? A. The topography of the ground wouldn't have taken in the water.

.    .    .    .    .    .    .    .    .    .

"Q. Is there any reason why it couldn't be placed further north? A. At the time I think there was a big tree there.

"Q. There was no reason as to perfect drainage why this couldn't have been placed out of the line of that sidewalk, was there? A. It could have been placed further north, yes, sir."

The only error assigned is that the court erred in refusing to give the jury a peremptory instruction to find for the defendant. The contention of counsel for defendant is that the most that may be said in favor of plaintiff's position is that her injury resulted from a danger inherent in a general plan of street improvement prescribed by the legislative branch of the

city government and, consequently, is one for which she can have no recourse against the city.

The rule is well settled that in the improvement of its public streets a city acts in two capacities, governmental and ministerial (Ely v. St. Louis, 181 Mo. l. c. 729), and cannot be punished in damages for acts performed in its legislative or governmental capacity (Hays v. City, 159 Mo. App. 431; Gallagher v. Tipton, 133 Mo. App. 557), but may be held liable for injurious results of acts relating to the improvement and maintenance of public streets which are of a ministerial character. As we said in Gallagher v. Tipton, supra, "if an injury results from a danger inherent in the plan adopted the city is not liable, but if the danger has arisen from negligent construction or maintenance of the place it is liable."

The evidence clearly shows that the construction of the basin and auxiliary depression in the very midst of the passageway for pedestrians was not pursuant to any legislative action nor a part of a general plan of street improvement adopted by the city. The unusual location was selected by the city engineer, and his selection was purely a ministerial act. It was for the jury to determine whether the construction and maintenance of a depression of that character at such a place was negligence. That it increased the hazard to pedestrians, especially at night when the lights were poor, is hardly a debatable proposition. The only excuse the engineer had for putting it there was that to place it on either side of the traveled way would have involved the sacrifice of a shade tree. Manifestly such loss should not be weighed in the balance with the necessity for protecting human life and limb. The gravaman of the action is the negligent breach of a ministerial duty and the evidence of plaintiff discloses a good cause.

We are putting this decision, not on the ground that the basin and depression were in the sidewalk

space, for had they been placed on the corner they would have been partly within that space, and it could not be contended that the city would be liable for an injury resulting from such construction, but we are holding that since the depression was put in an unusual and more dangerous place in the sidewalk in apparent and actual departure from the general plan and, therefore, where pedestrians had no reason to anticipate it would be, the jury were entitled to indulge in the inference that such construction was a negligent breach of a ministerial duty the city owed to plaintiff. The judgment is affirmed. All concur.